Good afternoon, Your Honors. May it please the Court, Elizabeth Richardson-Royer, on behalf of the appellant Stephen Dean. I plan to reserve five minutes for rebuttal, but I will watch the clock. Both in district court and before this court, the government describes a somewhat simplistic and inaccurate version of the events in which the Deans induced Kaiser to dismiss its lawsuit by promising to have deleted the patient health information, or PHI, only to turn right around after the lawsuit was dismissed and say, guess what, we didn't delete it, now we'd like to be paid. And that isn't what happened. The government's narrative ignores the distinction between the patient health information that could be deleted, that was easily accessible in the Deans' emails and in their files, and the information which, undisputed, the Deans actually deleted in December 2012, and the information that remained hidden in unallocated space on the computers after deletion. Both parties knew this hidden data couldn't just be deleted and had to be forensically cleaned by an expert, and Kaiser knew that as they submitted an expert declaration explaining the detailed steps that would have to be taken, which is why the parties continued to negotiate about this hidden data for almost a year after the Deans deleted what they could delete. And so Kaiser didn't dismiss the lawsuit because the Deans said they deleted the PHI. Kaiser dismissed the lawsuit because the court granted a motion for summary judgment and told Kaiser that amending the complaint would be futile. So understanding this background, I think, is key to understanding why the government's seizure of the Deans' computers evidenced a callous disregard for their rights. Part of that is because of the agent's misrepresentation, or I wouldn't go so far as to say misrepresentation, but simplification of the background between Kaiser and Mr. Dean in order to obtain the search warrant. And part of that at this point really is that the seizure happened two years and eight months ago. No charges have been filed. They still have the computer? They still have the computer. Nothing has happened since the briefs were filed in this case last year. And if we were to talk about the merits, which I think this court should and can reach, once it's been that long, the burden shifts to the government to explain why it's reasonable for them to still have it. By the time the district court ruled on it, it had been like about nine months. Correct, Your Honor. Right. So the time element really wasn't before the district court. The time element, at that point it hadn't been as long, obviously. When does the statute run? It's five years. So we have another two years and four months. And so if there's no relief from this court from Mr. Dean, then I guess the government can take somebody's computers, make a forensic copy as needed for investigation. Well, why can't you go back? I mean, let's assume for a minute that we were to affirm, and all we're affirming is the district court's, I guess, discretionary decision not to exercise jurisdiction. Correct. Why couldn't you go back and file a new motion asking the court to assert jurisdiction now because it's been two and a half years or almost three years? We could do that if this court were to affirm the district court's decision. It would start the whole process over again, result in more delay for Mr. Dean, more time that the government is holding this machine unnecessarily. But I don't think we need to because I think the district court did abuse its discretion when it declined to take jurisdiction. Well, you think what you're talking about is the government has all this property, and government is saying, well, there's a lot of stuff here. The investigation is ongoing. We've got a lot of material, and you don't want to be rushed, and it doesn't bother us, government, because we're putting the sword of Damocles over somebody's head for all this time, and their life is disrupted. Their family life is disrupted, and they're living in constant fear and anxiety, and five years, but three and a half has gone by. Soon there will be four, and so you hear that, and you rule that the government ought to give the property back or else go to the grand jury, bring in an indictment. I'll tell you this. This is a confession. I used to do that. Every time I did it, I'd get reversed by the Ninth Circuit. I mean, I thought some of those matters that I was looking at were pretty, well, not outrageous but sort of close to that. Do you have any cases where this was done? Anything that was ordered to produce that information before the statute expired? In Ramsden v. United States, Your Honor, that case is similar to this case in that the property seized from the individual in that case was evidence that he had committed a crime, and no charges were ever filed in this country against that individual. The government maintained it wanted to produce the files it had seized to the British government for purposes of charges in Great Britain. In this court order— I have a little trouble following you because of the acoustics, and I wear hearing aids. I might be too close. What was it that you just said? The case of Ramsden v. United States is, I think, what Your Honor is asking about. In that case, evidence of a crime was seized by the United States government for purposes of turning it over to Great Britain as part of Great Britain's investigation into a crime that occurred in this court order that the government could keep copies as needed to turn over to the foreign government but had to return the originals to the individual, and no charges had been filed in that case. It was evidence of a crime, potential crime, just as it is here. That decision allows this court to do the same thing and to order that jurisdiction was proper and even to go further and say that the computer should be returned. Where was the property? In that case, the property was business records. It was papers. Okay, and to whom was it returned? It was returned to this criminal suspect because the government had a copy. I think that's what's critical here is the government, at the time the district court proceedings were taking place, had already made a complete forensic copy of Mr. Dean's computer, and we're not disputing that the government can keep that as needed in case it ever decides to bring charges, but it has no legitimate reason for keeping Mr. Dean's original computer at this point. There's no contraband on it. The contents are not subject to civil forfeiture. This is Mr. Dean's property, and given the length of time that's passed, the government has no further reason to keep it. That was a civil forfeiture? No, I'm just saying that this is not a case where normally once the length of time has passed, then it becomes the government's burden to show why it should keep the property, and there are normally two ways that it can do that. One is if the property is contraband, which this property is not, and the other is if the property is subject to forfeiture, which this property is not, and so the government has no interest in keeping the original computer at this point. It has no need to do so. If they file charges against him and convicted him, what happens to the property at that point? Is it subject to forfeiture? The property could be subject to forfeiture at that point, but at this point it's not, and they have a copy, so the investigatory needs, to the extent they're still in... In their opposition to the underlying motion, they had offered to say, let's see, they said, if Dean would agree to allow the government to forensically wipe the devices so that the government can ensure the private health care records of innocent Kaiser patients is kept confidential and safe, that they would return it. What's wrong with that offer? The government has only ever offered to completely wipe the computer, which contains Mr. Dean's personal business records, personal files, attorney-client privileged information, and we have to remember that the reason... They can't just wipe off the patient health information? They've never offered to do that. Could they? I think there is a way that that could be done, but Mr. Dean, it would involve an invasion of privacy. A lot of these e-mails came from Kaiser to Mr. Dean's e-mail account, so somebody would have to go through his personal e-mail account. Somebody would have to go through his personal computer. Mr. Dean's position is, it's Kaiser's fault this happened. Kaiser mishandled the patient data. Why should he have to suffer and not be compensated? But he doesn't claim that he's entitled to keep that patient information forever, does he? No, well, you know, he isn't behaving very well himself. There's a little extortion going on. Well, I would dispute that it's extortion because I'm not sure that the underlying threat was wrongful. We could get into the elements of extortion. But, you know, then you want them to wipe out. You're talking about wiping out other stuff. Well, you know, who knows? If they look at the other stuff, there may be things there that are evidence of criminality. Right, and Mr. Dean's position is just that since this isn't his fault that it happened, he's happy to have somebody forensically clean these machines, but he thinks that he should be compensated for the invasion of privacy that will occur. Like you said, there could be other personal, private information on there that he doesn't want anyone to see. So he's worried about his own personal right to privacy? That's why he has sought compensation. But he doesn't worry about the patient's records? Well, he has never and would never disclose private patient information publicly. He disclosed it to make a... He's threatened to. He's threatened to. Indirectly. Indirectly, yeah. As part of an ongoing negotiation. Well, to disclose that information would be a crime. To disclose that information would be a crime. No question. It would be a felony, probably. But the bottom line is that the government can't seize personal information to prevent someone from misusing patient information. Well, no, but they seized it as part of their search warrant. And they have a copy. So they may have seized it. The question is whether or not, you know, if they have decided they're not going to prosecute him for extortion, can they continue to keep the computer as they have? Well, the answer is clearly no, at least under the terms of the warrant. It expires a year after the investigation is over. But I think because there's no legitimate reason, the retention as of this date is already improper. And I'll save the remaining time for rebuttal. Okay. Good morning, Your Honors. Anthony Brown for the United States. Almost everything opposing counsel talked to you about in the last 10 minutes is, was... Speak into the mic. Yes, of course. Almost everything opposing counsel talked to you about in the last 10 minutes was actually not before the district court and is not properly before this court. And so what I want to start by talking about is the scope of the legal issue that actually is before this court and also the facts that go to that. The scope of the legal issue is whether or not Judge Phillips abused her discretion in not taking jurisdiction over the motion. That's the only issue before the court. I thought I raised that with her. You did. That gets me to the second point that I want to make, which is that was an issue that was decided in September 2014. The only basis that Mr. Dean raised at that point for the court to take jurisdiction over his motion was a supposed omission of a statement about whether or not he had won a motion for summary judgment in the affidavit of the search warrant. That was the only basis that Mr. Dean raised at that point. In subsequent appellate briefing, Mr. Dean has raised two additional points, which were, to be honest, the majority of what the court was asking about. Always be honest. I'll try my best, Your Honor. Those two questions, Judge Paias, you asked the questions about whether it would be wrong, what's wrong with forensically wiping the computer. That was a question that went to whether the government should be able to hold on to the information or not, how long is too long before the government brings a prosecution to hold on to that information. None of that was raised below. None of that was before the district court. These are all issues that have been raised for the first time on this appeal. Let's assume for a minute that just as I'm going to ask you this, suppose that we were to affirm the district court on this record. What she did was she didn't get to the merits. She just said, I'm not exercising jurisdiction here. It goes back down. Why couldn't they file the same motion again and say, hey, it's been three years now, and they haven't filed the prosecution. We want it back. They could. That's absolutely what they could do. Things have changed. Things have changed, and they could file that motion tomorrow if they wanted to, once we resolve this case here. There's nothing that prevents them from doing that, and they probably should have done that, and then the record would have been more complete in this case. But that also gets me back to what the record is on this case, and I want to get back to what the factual record is on this case, because Judge Phillips also decided in the district court that she wasn't going to consider any of the evidence that was submitted in the reply brief. Mr. Dean filed a motion, and in the record, you'll see that the motion has no declaration attached to it. It has no exhibits attached to it. It has no evidence attached to it. It wasn't until the reply brief that Mr. Dean filed any evidence in the case. And just to illustrate the paucity of the evidence that Mr. Dean supplied to the district court, even in the reply when he provided a declaration, there isn't a single statement in that declaration that attests to evidence to show, for example, irreparable injury in this case. Mr. Dean never said that there was personal information on the computer. He never said that there was business information on the computer. He never identified photographs that were on the computer. He provided no basis whatsoever for the district court to find that he would be irreparably injured if the computers weren't returned to him. There is simply no facts in the record. And to illustrate this and highlight it, I want to point out to the court that in the opening brief on appeal, the opposing counsel couldn't find anything in the record, I assume, which is why to show that there was evidence for an irreparable injury, opposing counsel had to cite to the request for judicial notice. And that citation actually points to some filings that were made in the superior court in the underlying dispute between Kaiser and Mr. Dean, which is to say there's nothing before the district court that would support this. And we've gone way outside the record. So, you know, I want to ask you this question. I read your opposition in the district court. Yes. You know, the opposition you filed to the original motion. And in there, as I had read, you had offered to return the computer if he were to let you agree to letting the government wipe it clean. That's correct, Your Honor. And you say so that we can ensure the private health care records of innocent Kaiser patients, which suggests really what the government's motive was or goal was, was just to get that health care information out of his hands so that there's no potential possibility or threat that he could ever disclose it or have access to it. That's what it sounds like. You want to keep it confidential, I'm saying. No, I think I can put it in context and explain what that means. This is the situation, Your Honor. Repeatedly throughout the litigation with Kaiser, Mr. Dean swore under penalty of perjury that he had made a – that he had searched diligently for the patient health information, that when he found it he had deleted it. Not only had he deleted it, he'd put it in the recycling bin and emptied the recycling bin, implying that he had no access to it anymore. Mr. Dean settles the case in September 2013. Within six days, the ink's not even dry on the settlement agreement, he contacts Kaiser and says, Oh, I have personal health information on my computer. We really have to talk about this. On October 1, 2013, this is in the search warrant, Mr. Dean forwards an email to Kaiser's attorney, and it's a 2010 email that has personal health information on it. Now, if Mr. Dean really had truly deleted all the emails and emptied the recycling bin, he could not have accessed that email without some kind of forensic tools. There's no way that he could have done that. So – and then, of course, the search warrant states numerous facts about the way that Mr. Dean approached Kaiser with this information that support the allegations of extortion and threats. The government is now in the position where to return this personal health information to Mr. Dean would be essentially to return the means of the extortion back to the person who has proven he is incapable of holding onto it without extorting Kaiser. Let me give you an analogy. See, there's – You haven't filed a case, though. We haven't filed a case, but it's still – It doesn't seem – There's still two and a half years left. I realize you've got to weigh on the statute of limitations, but this does not seem like a complicated case. It may be, Your Honor. It's not my decision to make. No, I understand, but, I mean, it's something you could easily present to the grand jury and say, hey, what do you think? But even then – Do you think this is extortion? Even then, Your Honor – and I want to backfill the record even more and just point out that within, I think, six or seven weeks of the initial seizure, Mr. Dean had – the government returned all of Mr. Dean's phones. The government has now returned all of his computers, except for the one computer on which the government found personal health information. The government has been in negotiations with Mr. Dean, as the record shows. We're trying to find a way to return Mr. Dean's computers to him, but when the government asked Mr. Dean if it would be okay if we forensically wiped the computers so that there was no possibility that he could continue to extort Kaiser, Mr. Dean said, sure, you can do that if you promise not to bring charges against me. And that's – it's sort of a piece with the extortion with Kaiser. Mr. Dean wants what Mr. Dean wants, but he's not in a position to negotiate about that right now. Now, look, if Mr. Dean wants to bring a motion to talk about the unreasonable delay in bringing the charges and whether the government should hold on to – be able to hold on to his computer for that long, that's something he could do at this point. But – You know, Kaiser could always go back to Superior Court and get a preliminary injunction and join him from never releasing that stuff. Kaiser possibly could do that as well. But I have to – I mean, what I want to emphasize is that this is all speculation. This is all stuff that we're guessing about, because the only issues that were raised before the district court had to do with the omission of the statement about the motion for summary judgment. Now, I don't know if the court cares for me to discuss that or not. But, you know, they're not acting at times. Does he have a prior record? Does he have a criminal record? I am not aware of that fact, Your Honor. Yes. Yeah, I didn't think he did. So sometimes you have these delays that put these people under a lot of pressure. Think about it. You know, disrupts the family, disrupts their lives. Can I suggest, Your Honor? It's like – anyway, so – and this can go on for years, and finally they're ready to give up, you know. Or the indictment is filed the day before the statute runs. That happens. That has happened. I'm not sure it's going to happen in this case. No, but it's an investigative technique, too. Oh, I see. I don't believe the government's involved in that, Your Honor. Why? If you think – are you suggesting that the government – I'm just speaking generally. Oh, well, I can assure you we're not waiting around to see if Mr. Dean will come in and negotiate with us or plead or anything like that. You know, I have to suggest that the fact that the appeal is pending has sort of changed the issues a little bit because it's hard to – we've been trying to negotiate with Mr. Dean about the return of the property, and this goes way outside the record, Your Honor, but I think counsel will correct me if I'm wrong. The last – in April 2015 was the last sort of communications we've had, and Mr. Dean had withdrawn his offer to allow the government to forensically wipe the computers in exchange for not bringing charges. So we're sort of all hanging fire on the issue right now. If – there was one last issue I wanted to talk about, and that's with respect to callous disregard. I think that's sort of the key issue here, and Mr. Dean really has failed to show that there was any callous disregard in this case. The government went and got a search warrant from a magistrate and presented the facts to the magistrate and then sought extensions of time through December 2014 to be able to search the computers. So the government's been following the processes it's supposed to follow. I'm not sure whether the court wants me to address the question of whether or not the failure to mention the motion of summary judgment in the search warrant affidavit affects the probable cause determination, but the answer to that is no. The – basically what Mr. Dean has suggested is that we should apply a sort of Frank's analysis here, and the question would be would it have made any difference if the government had mentioned in the search warrant affidavit that there was a motion for summary judgment and that it was successful. I don't think it makes any difference. As Judge Phillips noted below, the case wasn't resolved on the motion for summary judgment. It was resolved by settlement to compromise. And then even using Mr. Dean's logic, I think that if the information about the motion for summary judgment had been included in the affidavit, that that would actually have underscored the wrongfulness of his conduct here because what Mr. Dean – the whole reason why he won the motion for summary judgment in the Superior Court was he asserted that the settlement agreement – under the settlement agreement, the parties had released all of their claims, everything, and so Kaiser couldn't come back and demand additional money from him or they couldn't come back and seek a restraining order from him because they had released all their claims having to do with their business arrangement. Well, what's sauce for the goose is sauce for the gander. Mr. Dean was one of the parties to that settlement agreement. He released all the claims too. And if you take a look at the settlement agreement that's in the record, the settlement agreement actually says claims that are known and unknown. Mr. Dean is now claiming that he had an unknown claim. There was PHI on his computer he wasn't aware of, and he's trying to extort money from Kaiser based upon that. Well, probably the settlement agreement has stopped him from making that claim if he goes back into the Superior Court, but certainly it shows that he had no legal basis to ask Kaiser for money. And in any event, even if he had the PHI in his possession, he wasn't allowed to threaten Kaiser to go to the public in order to get the money from Kaiser. That was the whole point of the search warrant. Why would Kaiser turn over? How many records were turned over, thousands of them? I think that over the course of the time that Kaiser worked with Mr. Dean, they turned over both electronic records and paper records, and that there were thousands of records. Yes, Your Honor. Why would they choose a person like that to entrust with records? I don't know the answer to that. They had no earlier dealings with him. I don't know the answer to that, Your Honor. What I do know is that they sought to terminate the agreement in about 2010, and that's sort of what led to this whole litigation in the Superior Court. I didn't hear what you just said. I do know that Kaiser sought to terminate the agreement in 2010, and that's kind of what led to the underlying lawsuit in the Superior Court. Okay. Thank you, Your Honor. We don't have questions, I don't think. I have just two points I want to make. The first is to correct a factual misstatement, which my opposing counsel said that the case between Kaiser and Mr. Dean was settled in 2013, and it just wasn't. The motion for summary judgment was granted in August 2013. There was a settlement conference, which failed, and then Kaiser dismissed the case. So there was no settlement in 2013. It wasn't days after the ink was dry, as counsel said, that Mr. Dean came back to further negotiate. You're talking about the Superior Court case? I'm talking about the Superior Court case. It was not settled. Why do we care about that? Well, counsel said it makes Mr. Dean look bad if he settles the case and then days later comes back. All right. There was no settlement. Yeah. And then the other thing I wanted to just touch upon Judge Pai's question about the government saying that its interest was in protecting the PHI, and it said that again in the answering brief at page 39, and clearly that's what the government cares about. Otherwise the coffee would suffice. The government is doing for Kaiser what Kaiser couldn't do in its civil litigation, was to obtain these machines without having to compensate Mr. Dean for it. And I don't think there's any question about that, and it's improper, unless the court has other questions. Thank you. Okay. Thank you, counsel. We appreciate your arguments. Matter submitted.
judges: Pregerson, Noonan, Paez